## Case No. 7,023.

### In re INDIANAPOLIS, C. & L. R. CO.

[5 Biss. 287; 8 N. B. R. 302; 18 Int. Rev. Rec. 79; 21 Pittsb. Leg. J. 4; 5 Leg. Gaz. 275.] [1]

Circuit Court, D. Indiana. May, 1873.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 18 Int. Rev. Rec. 79, and 21 Pittsb. Leg. J. 4, contain only partial reports.]

Porter, Harrison & Hines, for petitioner in review, cited In re Sherburne [Case No. 12,-758]; In re Boston. H. & E. R. Co. [Id. 1,677]; In re Ellerhorst [Id. 4,381].

Hendricks. Hord & Hendricks and Joseph E. McDonald. for respondents, cited In re Miller [Id. 9,553].

DRUMMOND, Circuit Judge. It is to be observed that there was no property in possession of the bankrupt court. Assignees had been appointed, but they were nominal and were the same persons that were receivers under the order of the state court, and that of the circuit court of the United States; and all the property of the bankrupt was held by the receivers of the road, managed by them, and, of course, subject to all valid liens subsisting against the company; and if the property had been ultimately controlled by the bankrupt court, it, of course, would have been disposed of in such a way as to marshal the different claims and liens existing against the road,

and they must have been paid according to their priority, the bondholders confessedly holding the first lien.

It was to avoid the sacrifice of so much property, which it was thought would be necessarily incurred if it remained in the bankrupt court, that the stockholders made the arrangement which has been referred to, and which was assented to by all the creditors except only Charles Dwight and the Whitewater Valley R. R. Co., and the question is, whether with such an immense property, with so many and various liens and incumbrances upon it, and such a great preponderance, both in numbers and amounts, of those holding these liens, desiring the withdrawal of the case from the bankrupt court, it should be prevented by the opposition of the two creditors already named. It is quite clear that if the case had been wound up in the bankrupt court, and the property disposed of, the probability of its realizing anything for the two non-assenting creditors would not have been very great, as all these other claims would have first to be paid; and, in fact, there would be great doubt, perhaps, whether any portion of the floating debt would be paid, under which, of course, would be included that of the two non-assenting creditors, and, therefore, it may be a question whether it was not most for the interest of those non-assenting creditors themselves that the case should be withdrawn from the bankrupt court, and some arrangement made by which their claims could be satisfied, and thus leave this large property in the control of the company, with the assent of the other creditors, to be made available, if it can be, for the ultimate payment of the claims which might be brought against it.

It is also a question, whether, in a case like this, it is for the interest of all the various parties that the property should remain in the bankrupt court, or be withdrawn from it. For example, there could be no controversy that it would be entirely competent for the party against whom a decree in bankruptcy was made, with the assent of all his creditors, to withdraw it from the bankrupt court, and the question is, whether the opposition of an insignificant portion of the creditors can prevent that result. I think that the bankrupt court, as a court of equity, has a full equitable discretion upon this subject, and can allow a case to be withdrawn from it, provided it is done without prejudice to the interests of any of the parties, debtors or creditors, who are before it. And in this case I think it was competent for the bankrupt court to allow the case to be withdrawn from it, protecting the interests of the different non-assenting creditors. And if the court had given the same protection to the claims of the Whitewater Valley R. R. Co. that it did to that of Dwight, this court would not feel inclined to interfere with the decree. The reason why the district court made a distinction between the claims of the two non-assenting creditors was undoubtedly because that of the Whitewater Valley R. R. Co. was not set forth so distinctly as the other, being somewhat vague and uncertain, and depending more or less upon contingencies. But it seems to me, as long as there was a creditor who prima facie had a claim against the bankrupt company which was liable to be proved, before the court could dismiss the proceedings it should have given some security or protection to that claim. And it will be recollected that there was an allegation, which was not denied, that the Whitewater Valley R. R. Co., had paid a considerable amount as drawer of bills of exchange, held by the Globe National Bank, and which, therefore, was a distinct and positive claim, either legal or equitable, against the bankrupt. And it is further to be observed, perhaps, as a reason why the district court made a discrimination between the claims of the non-assenting creditors, that the proceedings in bankruptcy had been pending some time; that all the other claims had been proved in the bankrupt court except that of the Whitewater Valley R. R. Co. Some excuse is given for the fact that these claims of the latter company were not proved in bankruptcy, that one of these assignees, who was also one of the receivers, had requested that the proof should be postponed and should not then be presented in the bankrupt court.

On the whole, then, it seems to me, that if the proper protection can be given to the claims of Dwight and of the Whitewater Valley R. R. Co., it would be unwise, and contrary to the best interests of all concerned, for the property to remain in the bankrupt court; and that it is desirable that it should be restored to the company, to enable it, with the aid and co-operation of all the principal creditors and that of the stockholders, to endeavor to retrieve itself from its present embarrassments. The property is very large, the business done is apparently quite profitable, and there is certainly strong reason for supposing that with time the company may be able to extricate itself from the load of debt which now oppresses it. It seems to me, therefore, nothing more than the exercise of a reasonable equitable power which rests in the bankrupt court, to allow the case to be withdrawn from its jurisdiction under circumstances like these, and giving adequate security to one or two parties holding claims, who are opposed to the withdrawal, from causes which do not fully appear, and which are either real or imaginary, but the prominent object of whose opposition is to coerce some settlement from the great mass of the creditors. Therefore, this court, while conceding the correctness of the principle upon which the decree of the district court was made, will modify its order dismissing the proceedings in bankruptcy, and will allow it to be done upon the con-

dition that the bonds which have been deposited for the security of Mr. Dwight, shall be put in some safe place as indemnity for any decree or judgment which he may obtain for his claim against the Indianapolis, Cincinnati & Lafayette R. R. Co., there to remain until the case is ultimately disposed of by the highest court to which it can be taken; and in this particular instance, as Mr. Dwight is a citizen of Ohio, the court will require the suit to be brought in the circuit court of the United States for this district; and also upon the condition that adequate security is given for any claims which may ultimately be established by the Whitewater Valley R. R. Co. against the Indianapolis, Cincinnati and Lafayette R. R. Co.—the claims both of Dwight and the Whitewater Valley R. R. Co., to be presented and prosecuted with reasonable diligence, and in default thereof, any of the parties in interest to have the right to apply to the district court for the withdrawal of the bond and securities so deposited.

Decree accordingly.